UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

WESTWAY HOLDINGS                              CIVIL ACTION
CORPORATION, ET AL.

VERSUS                                        NO: 08-1387

TATE AND LYLE PLC, ET AL.                     SECTION: "J" (5)

### ORDER AND REASONS

Before the Court is Defendants Tate & Lyle, PLC, Tate & Lyle North American Sugars, Ltd., and Tate & Lyle Industries' **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 8)**. This motion, which is opposed, was set for hearing on September 17, 2008 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Defendants' motion should be granted.

### Background Facts

Plaintiffs Westway Holdings Corporation and Westway Trading Corporation (collectively "Westway") filed this case against Tate & Lyle, PLC, Tate & Lyle North American Sugars, Ltd., and Tate & Lyle Industries (collectively "Tate") claiming breach of a

noncompetition agreement, breach of an implied covenant of good faith and fair dealing, unfair trade practices, and seeking injunctive relief.  The contract at issue arises from the 2002 sale by Tate to Westway of a subsidiary named United Molasses Company ("United Molasses").  In connection with that sale the parties signed a noncompetition agreement.  The agreement, along with three subsequent amendments, restricts Tate's ability to trade Molasses prior to July 19, 2007 in a restricted area that the contract defines as "North America or the extra-continental states and territories of the United States of America."  The noncompetition agreement between the parties states that it is governed by Illinois law and that all parties consent to venue and personal jurisdiction in any federal court in the State of Delaware.  Westway filed this suit alleging that Tate breeched the noncompetition agreement by purchasing 26,000 metric tons of molasses from mills in Mexico, storing the molasses in Mexico and shipping it to Puerto Rico and Florida prior to the July 19, 2007 date set by the agreement and its amendments.

    United Molasses operated for several decades in various locations, including Louisiana, as a wholly-owned subsidiary of Tate & Lyle PLC.  United Molasses was purchased in 2002 by Westway Holdings Corporation, a company headquartered in New Orleans and involved in the global molasses trade.  The negotiations surrounding the sale and signing of the

noncompetition agreement involved numerous telephone and electronic communications to and from New Orleans, as well as several meetings in New Orleans involving Tate representatives. Following the sale there were numerous violations of the noncompetition agreement which resulted in negotiations and settlement agreements between the parties.  None of the violations involved Tate activities in Louisiana.  In the course of crafting these settlements numerous telephone calls and electronic communications were directed to New Orleans.  As a result of these settlement agreements the noncompetition agreement was amended and its effective date extended to July 19, 2007.

Tate & Lyle PLC and Tate & Lyle Industries are corporations organized under English law with their principal place of business in London.  Tate & Lyle North American Sugars Ltd. (subsequently renamed Redpath Sugars Ltd.) is a corporation organized under the laws of the Province of New Brunswick, Canada with its principal place of business in Toronto.  There are no Tate offices, employees, or business conducted in Louisiana.

### The Parties' Arguments

The Tate defendants have brought this motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Defendants argue that there are no

contacts between them and the Louisiana forum that would allow this Court to assert personal jurisdiction in this case.

The Westway plaintiffs contend that there are contacts between Tate and the forum.  They argue that Tate has specific contacts with Louisiana that relate to the claims made in this suit.  Specifically, plaintiffs assert Tate's contacts based on: (1) the sale of a subsidiary that had extensive Louisiana contacts to Westway, a Louisiana headquartered company; (2) contact with Louisiana in the form of communications and travel during the negotiation of the sale of United Molasses; (3) contact with Louisiana in the form of communications during the negotiation of settlements for the various violations of the noncompetition agreement; and (4) the noncompetition agreement itself because it creates a continuing obligation not to compete in Louisiana.

## Discussion

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a suit for lack of personal jurisdiction.  "[T]he plaintiff bears the burden of establishing the district court's jurisdiction" over a nonresident defendant.  <u>Gundle Liniq Constr. Corp. v. Adams Co. Asphalt, Inc.</u>, 85 F.3d 201, 204 (5th Cir. 1996).  Personal jurisdiction over a nonresident defendant is established where (1) the forum state's long arm statute confers

4

personal jurisdiction over that defendant, and (2) the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment.  Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002).  As Louisiana's long arm statute extends personal jurisdiction on any basis consistent with the Constitution, the Court need only consider the limitations of the Due Process Clause.  See La.Rev.Stat.Ann. § 13:3201(B).  The exercise of personal jurisdiction over a nonresident defendant satisfies due process when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945).  Contact with the forum state may create general or specific personal jurisdiction.  Specific personal jurisdiction, as argued by the plaintiff here, exists when the defendant's contacts with the forum "arise from, or are directly related to, the cause of action."  Revell, 317 F.3d at 470 (quoting Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001)).  Specific personal jurisdiction requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denkla, 357 U.S. 235, 253 (1958).

   Plaintiffs first argue that the defendants availed themselves of the Louisiana forum and could have expected to be

5

hailed into a Louisiana court because of their prior ownership of United Molasses and their decision to sell United Molasses to a Louisiana based company.  In addition to arguing that such contacts themselves establish jurisdiction, plaintiffs contend that United Molasses' entrenched Louisiana contacts and the sale to Westway undergird and provide context for defendants' subsequent contacts with Louisiana through negotiations and violations of the noncompetition agreement.  This argument falls flat.  The contacts of United Molasses when it was a subsidiary of Tate are not relevant to an analysis of personal jurisdiction in this suit.  Under Louisiana law, personal jurisdiction is determined as of the time a suit is filed.  <u>de Reyes v. Marine Mgmt. & Consulting, Ltd.</u>, 586 So.2d 103, 114 (La. 1991) (citing <u>Asarco, Inc. v. Glenara Ltd.</u>, 912 F.2d 784 (5th Cir. 1990)).  Additionally, United Molasses was a wholly-owned subsidiary of Tate.  The Fifth Circuit has established that "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154, 1159 (5th Cir. 1983).  In order to determine personal jurisdiction of a parent based on a subsidiary the parent-subsidiary relationship must be analyzed.  Such analysis has not


hailed into a Louisiana court because of their prior ownership of United Molasses and their decision to sell United Molasses to a Louisiana based company.  In addition to arguing that such contacts themselves establish jurisdiction, plaintiffs contend that United Molasses' entrenched Louisiana contacts and the sale to Westway undergird and provide context for defendants' subsequent contacts with Louisiana through negotiations and violations of the noncompetition agreement.  This argument falls flat.  The contacts of United Molasses when it was a subsidiary of Tate are not relevant to an analysis of personal jurisdiction in this suit.  Under Louisiana law, personal jurisdiction is determined as of the time a suit is filed.  <u>de Reyes v. Marine Mgmt. & Consulting, Ltd.</u>, 586 So.2d 103, 114 (La. 1991) (citing <u>Asarco, Inc. v. Glenara Ltd.</u>, 912 F.2d 784 (5th Cir. 1990)).  Additionally, United Molasses was a wholly-owned subsidiary of Tate.  The Fifth Circuit has established that "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154, 1159 (5th Cir. 1983).  In order to determine personal jurisdiction of a parent based on a subsidiary the parent-subsidiary relationship must be analyzed.  Such analysis has not

occurred here.  It is not even clear that before the sale to Westway that there was personal jurisdiction over Tate in Louisiana based on United Molasses' contacts.

Second, plaintiffs argue that personal jurisdiction arises because of the contacts the defendants made with the Louisiana forum during the course of negotiating the sale of United Molasses.  Specifically, Tate was involved in numerous telephone calls, emails, telephone conferences and video conferences that were directed to or from New Orleans.  Representatives of defendants traveled to New Orleans during negotiations. Plaintiffs argue that these contacts are supported and enhanced by the fact that United Molasses had operated with extensive contacts in Louisiana for decades, and that as a result the interactions with the forum related to the sale were not a mere fortuity.  However, defendants counter that the fact that negotiations occurred in New Orleans is a mere fortuity and the sole result of the buyer, Westway, being located in New Orleans. The Fifth Circuit has made clear that negotiations between a resident and nonresident and visits to a forum related to those negotiations do not, without more, constitute the purposeful activity necessary to create personal jurisdiction.  Stuart, 772 F. 2d at 1193-94; Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986).  Additionally, this Court has previously held that when the contacts and activity of the defendant would

have been the same in any other state, then such contacts are a mere fortuity.  <u>Olaques v. Stafford</u>, 316 F. Supp. 2d 393, 400 (E.D. La. 2004).  Plaintiffs' argument that Tate purposefully availed itself of the Louisiana forum based on sale negotiations could be made regarding any forum in which a negotiating partner is located.  The fact that negotiations occurred in Louisiana was a mere fortuity based on Westway's location.

   Separately, plaintiffs argue that defendants have made sufficient contact with Louisiana based on negotiations to settle claims by Westway that the noncompetition agreement was breached.  Similar to the supposed contacts from negotiating the sale, these contacts consist of telephone calls and emails that were directed to Louisiana.  Again, similar to the alleged contacts based on the United Molasses sale, these contacts result solely from the mere fortuity that Westway is headquartered in New Orleans.  These communications would have had to take place in any forum where Westway was located.

   Lastly, plaintiffs argue that the noncompetition agreement itself provides a basis for personal jurisdiction.  Plaintiffs assert that the noncompetition agreement creates continuing contact between defendants and the forum because of their agreement not to compete in the forum, and that such an agreement constitutes an availment of the laws of Louisiana.  In pressing this argument, plaintiffs rely heavily on the Supreme Court's

8

decision in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). In Burger King, the Supreme Court held that a franchise agreement between a nonresident franchisee and Burger King, based in Florida, gave rise to personal jurisdiction over the franchisee in the courts of Florida. Id. at 487. The existence of a contract between a nonresident and a resident cannot alone establish personal jurisdiction. Id. at 478. Instead, a court must consider many factors including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if the "defendant purposefully established minimum contacts within the forum." Id. at 479. Engaging in that analysis, the Burger King Court found that the dispute at issue "grew directly out of 'a contract which had a *substantial* connection with the State.'" Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957))(emphasis in original). The parties had created a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." Id. That contract allowed the plaintiff to use Burger King's trademarks and have access to confidential Burger King business information. Id. Plaintiff submitted to the "long-term and exacting regulation of his business from Burger King's Miami headquarters" and was required to make ongoing payments to Burger King in Florida. Id.

The noncompetition agreement at issue in this case bears little resemblance to the contract in Burger King.  Plaintiffs argue that the noncompetition agreement established purposeful and continuous contact between the defendants and Louisiana because of the promise by the defendants not to partake in any activity in Louisiana in direct competition with Westway.  This agreement not to interact is the opposite of the agreement in Burger King.  In Burger King, the parties intended through the contract to be tied together such that confidential information would be shared and franchise fees would be paid.  Westway and Tate have had no ongoing interaction except to engage in settlement negotiations when the noncompetition agreement was breached.  A contract encapsulating an agreement not to interact, and where there has been no prior interaction other than the sale of a subsidiary, is hardly analogous to the contractual arrangement in Burger King and does not demonstrate the kind of purposeful establishment of forum contacts that the Supreme Court has required.

Additionally, the noncompetition agreement contains a choice-of-law clause, selecting Illinois law, and an agreement of the parties to submit to the jurisdiction and venue of the federal courts in Delaware.  While a choice-of-law provision does not by itself confer jurisdiction, it is a factor to be taken into account when determining whether a party has purposefully

availed itself of the forum's laws and has an expectation of litigation there. Burger King, 471 U.S. at 481-82.  Unlike in Burger King where a choice-of-law clause selecting Florida's laws reinforced the substantial contractual relationship between the parties that supported jurisdiction over the defendant, the choice-of-law clause in the noncomeptition agreement at issue here reinforces the distance that the defendants sought to keep from the Louisiana forum.  Tate's actions of selling United Molasses, entering into an agreement not to compete in Louisiana and elsewhere, and including choice-of-law and forum clauses in the agreement evidence an intent to have no contact with Louisiana.  The only contact that Tate has had with Louisiana are negotiations with Westway.  Such contacts only exist because of the mere fortuity that Westway is headquartered in New Orleans.  Accordingly,

**IT IS ORDERED** that defendants' **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 8)** is hereby **GRANTED**.

New Orleans, Louisiana, this 25th day of September, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

11